## No. 396.

### Mrs. M. J. Puckett and Husband v. W. Ingram Law.   E. Nalle, Warrantor.

It was clearly the purpose of the Legislature, by the act of 1840, enlarging the powers of commissioners for the State residing in other States, to confer upon them the usual powers and functions belonging to notaries by the laws of this State.

Written acts which, by intendment of law, are clothed with solemnities in their execution, in order that they may become enduring records of past events, more surely to be relied upon than the frail memory of men, should not hastily be disregarded even upon the positive evidence of a single witness of their falsity, when such evidence is isolated, unsupported by facts *aliunde*, and given by the witness in his own behalf under strong influences of self-interest.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita.   *Ray, J.   Todd & Brigham*, for plaintiffs and appellants.   *R. G. Cobb*, for warrantor and appellee.

Taliaferro, J.   In this case, a married woman having obtained a judgment against her husband for paraphernal claims, institutes a

hypothecary action to enforce the same against lands formerly owned by her husband, which are now owned by and in possession of third parties    To the plaintiff's suit, Nalle, the principal defendant, answered, denying that the wife ever had any just claims against her husband to entitle her to a mortgage on his property, and avers that if, by law, there ever existed a legal mortgage in her favor on the lands now owned by defendant, she formally renounced the same in a notarial act passed before John D. Elliot, a commissioner of the State of Louisiana for the State of Mississippi, on the fourteenth of June, 1860.

In an amended petition, the plaintiff alleges that the pretended renunciation of her rights, set up by the defendant, is null and void, alleging as nullities:

*First*—That the so-called commissioner was wholly unauthorized to receive or pass any act of renunciation, not being clothed by the laws of the State of Louisiana, then in existence, with authority to execute such acts.

*Second*—That she signed the writing called a renunciation in error of law and of fact; that she was not apprised or informed by the pretended commissioner, nor by any other person of the nature, character and extent of her rights on the said property of her husband, and was in entire ignorance of the character of the writing she signed; that she was not examined out of the presence or even in the presence of her husband, and an explanation of her rights given and her consent obtained to a renunciation of these rights according to the laws of the State of Louisiana; that she was induced to sign the act from the effect and constraint of marital influence exercised over her by her husband at the time and before she signed the act.

*Third*—That the pretended renunciation was procured by Edward Nalle fraudulently, through his promise to furnish her husband $3300 to enter lands with—an agreement which he never fulfilled.

The plaintiff pleads the prescription of one year against the attack made by the defendant upon her judgment, alleging the same to have been obtained on the first of June, 1871, nearly two years before the filing of defendant's answer, in which she sets up the nullity of her judgment. In this amended petition the plaintiff goes on to state the origin of her parapernal rights, about the validity of which there was much controversy, and much evidence taken. We have thought proper to narrow down this controversy to the consideration of the first two points made by the plaintiff, viz:

I. The authority or right of the commissioner to receive or pass acts of renunciation by married women.

II. Whether the renunciation taken by the commissioner is valid in law.

We think it was clearly the purpose of the Legislature, by the act

of 1840, enlarging the powers of commissioners for the State residing in other States, to confer upon them the usual powers and functions belonging to notaries by the laws of this State.    Among these is the power to take renunciations of married women of their rights on property sold or mortgaged by their husbands.    By the first section of the act of twenty-fourth March, 1840, commissioners are " authorized and empowered to take the acknowledgment and proof of any deed, mortgage or conveyance of any lands, tenements, slaves or real property lying and being in the State of Louisiana, and to take the acknowledgment and proof of the execution of any instrument of writing for the sale, transfer or assignment of any property, movable or immovable, and of rights and debts," etc.    If the terms here used do not directly and expressly confer upon commissioners the power to take the renunciation of married women of their rights on property, they would seem from their general scope clearly to imply that power.    A different construction would, it is obvious, render nugatory to a considerable extent the benefits and facilities to business transactions which were the primary objects of the act.

The renunciation of the plaintiff in the case before the court was made on the fourteenth of June, 1860.    She brought suit against her husband in 1871, and on the first of June of that year recovered judgment against him for the sum of $7857 97, with eight per cent. interest thereon from the third of April, 1857, with recognition of legal mortgage to date, and take effect from that time, and she is in this suit endeavoring to enforce that mortgage which she formally renounced before the commissioner in Mississippi nearly eleven years before.    But this renunciation, as we have already seen, she repudiates as having been obtained unduly through the marital influence of her husband and the fraud of the defendant.

The act of renunciation upon its face is in every respect full and complete.    It recites that all the requisites of the law necessary to the validity of such acts have been complied with, giving in detail all the formalities used in receiving the renunciation, and announcing the declaration of the wife that she executed the act voluntarily, after being fully informed of the nature and effect of the renunciation.    The act is signed by the wife, together with her husband, before the commissioner and in presence of two witnesses.    The act bears the official signature of the commissioner, with his seal of office.    The act must *prima facie* be regarded as authentic, and all the acts and declarations of the parties to it, we must assume, were done, made and acknowledged as detailed by the commissioner.

There is nothing in the record, except the testimony of the plaintiff herself, that impugns the verity of the act, or tends to show that its recitals are untrue.    There are no circumstances which support her

testimony. On the contrary, there seems to be some which go to weaken it. She testifies wholly in her own interest, and that interest doubtless a very strong one. Neither the commissioner himself, nor either of the attesting witnesses, nor any one else, has been called to testify on the subject. Her delay of ten or twelve years to have the alleged violation of her rights redressed is unexplained. Her memory of events that transpired in 1860, after the exciting events that have intervened in this country, may not, as to all matters relating to the act passed before the commissioner, be perfect and distinct. Written acts which by intendment of law are clothed with solemnities in their execution, in order that they may become enduring records of past events, more surely to be relied upon than the frail memory of men, should not hastily be disregarded, even upon the positive evidence of a single witness of their falsity; when such evidence is isolated, unsupported by facts *aliunde*, and given by the witness in his own behalf, under strong influences of self-interest.

We therefore conclude that the judgment of the court rejecting the plaintiffs' demand was properly rendered. Considering that the wife's rights, if she ever had any on the property she seeks to enforce her claims upon, were renounced by the act of fourteenth of June, 1860, before the commissioner, it becomes unnecessary to review the other issues made by the parties in this case.

It is therefore ordered that the judgment of the district court be affirmed with costs.